POWELL v. PEARLSTINE.

GARRIS v. SAME.

1. NOTICE TO PRODUCE—SECONDARY PROOF—EVIDENCE IN REPLY.—After a party, called upon by proper notice to produce a paper in his possession, has refused to produce it, and the opposite party has introduced secondary proof of its contents, the party so refusing cannot be permitted to introduce secondary evidence as to its contents, nor to introduce the paper itself.

2. IBID.—IBID.—IBID.—TESTIMONY DE BENE ESSE—ATTORNEYS—CASE CRITICISED.—This rule applies to a case of alleged fraudulent alteration of a mortgage, in which the testimony was ordered to be taken by the master, and the mortgage was offered at the taking of testimony *de bene esse*, after the refusal to produce it at a reference before the master on the responsibility of the attorneys for the party in possession, it being doubtful whether documentary evidence can be introduced at the taking of testimony *de bene esse* of witnesses other than subscribing witnesses (as was not the case here, and parties being bound by the acts of their agents). This case distinguished from Marshall *v.* Marshall, 42 S. C., 436.

3. A POINT NOT RAISED ON CIRCUIT need not be considered on appeal, but considered here, as no objection was made to its consideration.

4. FRAUDULENT ALTERATION OF MORTGAGE—DEBT.—The fraudulent insertion by the mortgagee of a second tract of land in his mortgage, renders the mortgage void as to the tract mortgaged as well as to the tract inserted; but it may be that the debt, secured by the mortgage, is not extinguished by the fraudulent alteration of the mortgage.

5. ATTORNEY'S COSTS—LIQUIDATED CONTRACTS.—Under the statute abolishing attorney's costs, except in "actions now pending," or in case of then existing liquidated contracts, an attorney is not entitled to costs in an action instituted after the passage of this statute, to cancel a mortgage given to secure a liquidated contract of a date prior to the statute, as the action was not upon the contract, but in equity for cancellation.

Before NORTON and TOWNSEND, JJ., Colleton, March and June, 1894.

Actions by A. C. Powell and C. W. Garris against I. M. Pearlstine & Sons, commenced August 9, 1893.

*Mr. A. S. Farrow,* for appellants.

*Mr. W. B. Gruber,* contra.

March 26, 1895.    The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.    These two cases depending upon the same facts, substantially, and governed by the same principles of law, were heard and will be considered together. It seems that on the 30th January, 1891, the said Powell executed a mortgage to one J. Berkman on a tract of land, described in the complaint containing sixty acres, which mortgage was duly recorded on the 7th of August, 1891, when it purported to cover another tract of land, containing thirty-five acres, which it is alleged was fraudulently inserted in the mortgage after it was executed, either by the original mortgagee or by the defendants, to whom it had been assigned.    It further appears that, subsequent to the execution of the mortgage, the said Powell sold and conveyed to the said Gairis, the plaintiff in the second case above stated, the thirty-five acre tract. And this is the only practical difference between the two cases. Subsequently, to wit: on the 21st of July, 1893, the defendants, Pearlstine & Sons, as assignees of the mortgage, advertised both tracts of land for sale on the 17th of August, 1893, under an alleged power of sale contained in the mortgage.

Thereupon, these actions were commenced on the 9th of August, 1893, for the purpose of enjoining said sale and having the said mortgage declared void on account of the fraudulent alteration of said mortgage, and the same delivered up and cancelled.    By consent, an order was passed on the 30th of October, 1893, directing the master of Colleton County to take and report the testimony.    Due notice was given to the defendants that, "on the call of these cases before the master," they would be required to produce the mortgage described in the pleadings; but when the mortgage was called for before the master, the same was not produced, "nor was any excuse given for the failure to produce the same."    Thereupon, the plaintiff introduced secondary evidence of its contents, together with testimony to establish the allegations of the complaint, which the Circuit Judge found, as matter of fact, was sufficient to establish the fraudulent alteration of the mortgage.    The defendants offered testimony before the master, which was objected to upon the ground that the defendants being in possession of the origi-

nal mortgage, could not themselves introduce secondary evidence of its contents, which testimony was taken down and reported subject to the objection. At a subsequent period the defendants examined several witnesses *de bene esse* under the act of 1883 (secs. 2345–2347 of Revised Statutes of 1893) before a notary public in the city of Charleston, and at the same time produced the mortgage, and submitted it together with the testimony so taken.

The Circuit Judge says, in his decre: "Upon the trial of the cause before me, many objections were urged against the introduction of the testimony taken before the notary public in Charleston, as well as that introduced by the defendants before the master. But, under the view I take of the matter, it will be unnecessary to pass upon but one of them. The defendants being in possession of the mortgage, and having failed to produce the same in response to the notice served upon them, could not themselves introduce secondary evidence of its contents; nor should they be allowed, at a later period, to introduce the mortgage on their own behalf." Accordingly, judgment was rendered granting the relief prayed for by the plaintiffs.

From this judgment defendants appeal upon the several grounds set out in the record, which need not be repeated here, as counsel for appellants in his argument here has very properly stated that these several grounds really raise but two questions: *First.* Was there error in excluding entirely the mortgage from evidence? *Second.* Even if the mortgage was altered, as claimed, was there error in cancelling the entire mortgage, instead of so much thereof as included the thirty-five acre tract?" The respondents, also, in accordance with the proper practice, have given notice that they would insist that the judgment below should be sustained upon other grounds than those stated in the Circuit decree, if this court should be unable to sustain said judgment upon the grounde there stated. But, as we think that the conclusion reached by his honor, Judge Norton, is fully vindicated by what he has said, it will be unnecessary to state the additional grounds relied upon by respondents.

As to the first question, we think it is clear, beyond dispute,

that the view taken by the Circuit Judge is fully supported, not only by the authorities which he has cited, but by reason also. In 16 Am. & Eng. Enc. Law, 860, we find the following language: "After a party has refused to produce a paper in his possession, and his adversary has proved its contents by secondary evidence, the party will not be permitted to contradict this secondary evidence by secondary evidence, or by putting the paper itself in evidence," and this doctrine thus laid down in the text is supported by high authority cited in the notes. Again, in 21 Am. & Eng. Enc. Law, 990, the same doctrine is again laid down, in the most explicit terms. The reason is obvious—the court will not permit a party to speculate upon the chances. If a party, who, upon notice, refuses to produce a paper which is in his possession, and thereby forces his adversary to resort to secondary evidence of the contents of such paper, should be permited afterwards to introduce the paper as a part of his own evidence, he would thus be afforded the opportunity of taking the chances whether the secondary evidence offered by his adversary should prove to be satisfactory or unsatisfactory to him. If the latter, then he would have the opportunity of correcting it by producing the paper itself, which, of course, would be the highest evidence of its contents; but, if the former, then he could, by omitting to offer the paper in evidence, suppress the best evidence of the facts in issue; and this no court, charged with the administration of justice, could, for a moment, countenance.

But it is unnecessary to pursue this subject further, as it is admitted in the argument here that the general rule is as above stated, and the contention is that the rule does not apply in the case. First, it is contended that the rule should not be applied to this case, because here the master was required to take all the testimony in the case and report the same to the court; and hence it made no difference *when* the paper was produced, and the plaintiffs suffered no injury by reason of the failure or refusal to produce the paper before the master, especially as it was afterwards put in evidence *by the defendants when* they took their testimony *de bene esse* in Charleston before a notary public, under the act of 1883. We do not

think that there is any force in this position; for,. in the first place, it is more than doubtful whether the act authorizes the taking of any documentary testimony in the manner there provided, unless, perhaps, it should appear, as it does not in this case, that the witnesses to be examined under that act were examined to prove the execution of the document or paper. In the second place, the fact still remains that it was left to the option of the defendants to introduce the paper called for in evidence or suppress the same, as they might see fit; and that is one of the very things which the rule is designed to prevent. The fact that the defendants did, after the plaintiffs had closed their case, offer the paper as a part of their own evidence, cannot affect the principle upon which the rule rests. The case of *Marshall* v. *Marshall*, 42 S. C., 436, cited by appellants, manifestly has no application to the present case. There the question was as to the contents of a lost will, and it was held that the fact that the clerk, in taking the testimony, did not pursue the prescribed order—first offering evidence of the existence and loss of the paper and then proof of its contents—did not constitute reversible error, inasmuch as all these facts did appear in the testimony as taken by the clerk. That, therefore, was a very different case from this. Here the defendants, after notice, refused to produce a paper in their possession, which it was alleged had been fraudulently tampered with, and never did produce the same until after the plaintiffs had been forced to resort to secondary evidence of the contents of such paper, when they attempted to offer the same as part of their own evidence.

Again, it is insisted that the defendants had good reason for declining to produce the paper when called for, because they wanted to use it afterwards in taking their own testimony in Charleston, and if they had produced it before the master, they would have lost the opportunity of doing so. In this connection a very significant fact appears in the decree of the Circuit Judge, for he says that when the paper was called for, it "was not produced, *nor was any excuse given for the failure to produce the same.*" This was well calculated to excite the suspicion, at least, that the reason now given was an afterthought.

But, passing that by, it is sufficient for us to say that the reason now given for not then producing the paper is altogether insufficient, for two reasons: 1st. It does not appear how the continued possession of the paper was necessary to the proper examination of the defendants' witnesses in Charleston, as it does not appear that they were subscribing witnesses to the execution of the mortgage. 2d. But even assuming that the possession of the mortgage was necessary to the proper examination of defendants' witnesses in Charleston, we cannot doubt that, even if the mortgage had been offered in evidence before the master, the court would, upon proper representations of such necessity, have allowed the defendants the use of the mortgage for a full examination of their witnesses.

Finally, it is urged that the failure to produce the mortgage when called for was not the fault of the defendants, but of their counsel, and that defendants ought not to be made to suffer by reason of what is termed a technical error on the part of their counsel. The fundamental difficulty in maintaining this position, is the fact that it no where appears in the "Case" that the refusal to produce the mortgage was due to the fault of the counsel for defendants. The bare statement of that fact, or of any other fact, appearing only in the argument of counsel, this court has often held, cannot be accepted as one of the facts of which this court has power to take cognizance. In addition to this, we would be very slow to believe that reputable counsel, after having been fully instructed by clients as to the real facts of their case, would advise a course which the law condemns as an attempt to suppress evidence. But even assuming that the refusal to produce the paper when it was called for, was advised by counsel, through some mistaken view of the law or some want of full information as to the facts, and not from any improper motive, which, of course, is not charged or even intimated in this case, we do not see how that can help the defendants. If the defendants, whether acting under the advice of counsel or not, saw fit, by refusing to produce a paper, alleged to have been fraudulently tampered with, to shut themselves off from afterwards introducing the paper as a part of their own evidence, under a wise and salutary rule of law, which, so

far from being technical in its character, is founded upon fundamental principles of justice, they must take the consequences of their own act.

Coming, then, to the second general question presented by this appeal, as to whether there was error in declaring the entire mortgage void, it might be sufficient to say that it does not appear that this point was ever raised before the Circuit Judge, as it is not alluded to in his decree, and first appears in one of the exceptions. But, as this objection was not raised by respondent's counsel, we will not decline to consider the question. It seems to us that the proposition that the fraudulent alteration of any instrument in writing renders the whole instrument void, is so well settled by authority, that little need be said upon the subject. We need not go outside of our own State for authority. In addition to the cases of *Mills* v. *Starr*, 2 Bail., 359, and *Burton* v. *Pressly*, Cheves Eq., 1, cited by respondent's counsel, see *Vaughan* v. *Fowler*, 14 S. C., 355, *Kennedy* v. *Moore*, 17 *Id.*, 464, *Plyler* v. *Elliott*, 19 *Id.*, 257, all of which sustain the above proposition.

What effect the conclusion reached in this case may have upon the liability of the plaintiff, Powell, on the debt intended to be secured by the mortgage, is not a question presented in this case, and cannot, therefore, be considered. It does not follow necessarily that because the mortgage is now a nullity that the debt intended to be secured thereby is extinguished. But, as we have said, that question is not before us, and, therefore, is not intended to be decided.

The judgment of this court is, that the judgment of Judge Norton, in both of the cases above stated, be affirmed.

There is, however, another appeal in these cases, taken by the plaintiffs from an order of his honor, Judge Townsend, disallowing the costs of the plaintiff's attorneys taxed by the clerk in these cases. These actions having been commenced since the passage of the act of 1892 (21 Stat., 30), it is quite clear that no such costs can be allowed unless these cases can be brought within the terms of the proviso to the act, which reads as follows: "That this shall not apply to

causes now pending, or existing liquidated contracts." We do not think that these cases fall within the terms of that proviso. While the phraseology of the proviso is not as clear as it might be, it seems to us that, inasmuch as costs can only be taxed in a case where an action has been brought, the words "existing liquidated contracts," in the proviso, must necessarily be construed to mean actions upon existing liquidated contracts, for no statute ever did allow costs upon an existing liquidated contract unless there was an action on such contract. Now, as these actions were not brought upon any contract, either liquidated or unliquidated, but, on the contrary, were brought on the equity side of the court, simply for the purpose of having a mortgage cancelled upon the ground of a fraudulent alteration thereof, and as it is conceded that these actions were not pending at the time of the passage of the act of 1892, we agree with Judge Townsend that, under the provisions of that act, no attorneys' costs can be allowed.

The judgment of this court is, that the order of the Circuit Court disallowing the attorneys' costs in these cases be affirmed.